ASSOCIATED POULTRY, INC. v. WAKE FARMERS COOPERATIVE, INC. (CARL HOLLEMAN, PERMANENT RECEIVER)

No. 7315SC125

(Filed 28 March 1973)

Receivers § 12— purchase of eggs — assignment of purchase price — assets in receivership — no priority status

> Where the F.H.A. had a security interest in the eggs and proceeds from the eggs of J. H. Muster, a farmers cooperative consented to pay directly to the F.H.A. the purchase price of Muster's eggs sold to or by the cooperative, and the transfer of Muster's eggs to the cooperative was treated by the parties as a sale with an assignment of the purchase price to the F.H.A., the cooperative did not act as a trustee holding the purchase price of the eggs in trust but a mere debtor and creditor relationship was established; consequently, Muster and the F.H.A. were not entitled to a priority status in the distribution of the cooperative's assets in receivership for amounts due for the purchase of Muster's eggs.

APPEAL from *Cooper, Judge,* 18 September 1972 Session of Superior Court held in CHATHAM County.

On 19 April 1971 a complaint was filed by Associated Poultry, Inc., against defendant, Wake Farmers Cooperative, Inc. (Wake), in which plaintiff sought, among other things, to have a receiver appointed for defendant. Following a hearing, and pursuant to an order of Judge Cooper filed 7 May 1971, Carl P. Holleman was appointed as permanent receiver of defendant corporation. In response to published notice to the creditors of defendant, J. H. Muster and Farmers Home Administration, United States Department of Agriculture (F.H.A.), appellants

in this appeal, filed a claim in the amount of $7,982.81 for eggs delivered and sold to, by and through defendant on their behalf. Appellants alleged they were entitled to "a superior lien on the proceeds of the sale" of the eggs involved.

In the report of the receiver, filed 24 April 1972, Holleman allowed appellants' claim in the amount of $6,880.38 as a general claim. Appellants filed exceptions to this report in which they alleged their claim was for $7,980.81 and excepted to the allowance of their claim as a general claim. A jury trial was waived on the issues raised by the exceptions and, after hearing the evidence, Judge Cooper made findings of fact and conclusions of law and entered an order denying appellants any "security interest in or priority in the assets of" Wake and allowing their claim in the amount of $7,980.81 as a general claim. Muster and F.H.A. appealed.

*Vaughan S. Winborne for plaintiff appellants.*

*No brief filed for defendant appellees.*

VAUGHN, Judge.

The evidence presented before Judge Cooper tended to show that J. H. and Margaret C. Muster executed a financing statement in favor of F.H.A. covering the proceeds and products of their crops, livestock, supplies, other farm products, farm equipment and inventory as collateral for a loan. A copy of this financing statement was filed with the Register of Deeds of Wake County on 11 December 1967. F.H.A. requested and received from J. H. Muster a "Consent to Payment of Proceeds from Sale of Farm Products" which gave notice that the F.H.A. held a perfected security interest in the eggs and proceeds from the eggs of J. H. Muster and directed Wake to pay the purchase price of such products sold to, by or through Wake directly to F.H.A. The "effective date" of the consent was stated to be 16 February 1971, but the receipt acknowledgment and agreement to pay as the consent document directed was not signed by a representative of Wake until 22 April 1971.

Appellants challenge the denial of their claim to a priority position among the creditors of Wake and the classification of their claim "as a general claim." Appellants assert that Wake acted as a trustee holding the purchase price of the eggs in trust for F.H.A. Appellants' claim to a priority status in the

distribution of Wake's assets in receivership is based upon that premise. Their argument is without merit. An examination of the evidence concerning all the circumstances of the transactions between the Musters, F.H.A. and Wake discloses that the parties treated the transfer of the Musters' eggs to Wake as a sale, with an assignment of the purchase price running to F.H.A. Upon delivery of the Musters' eggs to Wake, they were graded and a record of the amount owed the Musters was kept. The eggs were then commingled with eggs of other farmers and, after marketing, the proceeds were deposited into a general account from which payment was to be made based upon the previously established value. The "Consent to Payment . . . " form, offered as an exhibit by appellants, characterizes Wake as a "Purchaser" and seeks to have "100 per cent of the purchase price" of the eggs paid directly to F.H.A. by virtue of F.H.A.'s security interest and the consent of J. H. Muster. Appellants have failed to establish anything beyond a debtor and creditor relationship between them and Wake. The court did not err in failing to find that appellants are entitled to preferential status as to the assets of Wake.

Affirmed.

Judges BRITT and MORRIS concur.